# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

JAY S. KRAVITZ,

                                              Plaintiff,


        v.                                                    9:16-CV-1251
                                                              (GTS/ATB)

COUNTY OF COLUMBIA, et al.,

                                              Defendants.


JAY S. KRAVITZ, Plaintiff, pro se
JONATHAN M. BERNSTEIN, ESQ. for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

        This matter has been referred to me for Report and Recommendation by the

Honorable Glenn T. Suddaby, Chief United States District Judge.  Presently before the

court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt.

No. 48).  Plaintiff has responded in opposition to the motion, and the defendants have

filed a reply. (Dkt. Nos. 56-57, 58).  For the following reasons, this court agrees with

defendants and will recommend dismissal of the complaint.

## I.      <u>Procedural History</u>

        Plaintiff filed this civil rights action against defendants, alleging a denial of

constitutionally adequate medical care by defendants at the Columbia County Jail

("CCJ"), while plaintiff was incarcerated there as a parole violator from February 26,

2014 until May 30, 2014. (Complaint ("Compl.") (Dkt. No. 1)  Plaintiff originally

named the County of Columbia; David P. Bartlett, Sheriff of Columbia County; Thom

Lamphear, a Columbia County Jail Corrections Officer ("CO"); and "John/Jane Does(s), who are listed as "unknown members of the Columbia [County] Sheriff's Department" and unknown civilian employees and "Agents" of the Columbia [County] Sheriff's Department.  On December 2, 2016, after reviewing the complaint, Chief Judge Suddaby issued an order, dismissing the complaint in its entirety as against Columbia County and Columbia County Sheriff David P. Bartlett. (Dkt. No. 4).  After engaging in discovery, the remaining defendants have filed a motion for summary judgment, together with the relevant evidentiary documents and plaintiff's deposition.[1] (Dkt. Nos. 48-48-15) (Exhibits A-S).  No John or Jane Doe defendants were ever identified or served.

## II.    Relevant Facts

Plaintiff suffers from gout.  The issue in this case surrounds plaintiff's request to use his "medically prescribed" cane while he was incarcerated at CCJ.  Plaintiff claims that he informed the defendant of this medical need, but was refused, and instead, the cane was kept in defendant Lanphear's locker.  Plaintiff alleges that during one of his gout flare ups, he was forced to hop around the facility, suffering an injury to his knee as a result.  Because there are a substantial number of medical exhibits in addition to other documents filed with the defendants' motion and the plaintiff's papers, I will discuss the facts in more detail below in conjunction with my analysis of the summary

---

[1] Plaintiff's deposition in this action is filed as Defendants' Exhibit D and was taken on September 4, 2018. (Dkt. No. 48-8, Ex. D).  Defendants have also filed the transcript of plaintiff's General Municipal Law § 50-h hearing which was held on November 25, 2014. (Dkt. No. 48-9, Ex. E). A hearing under section 50-h of New York's General Municipal Law is held when a potential plaintiff files a "Notice of Claim" against the municipality under New York State Law.

judgment motion.

### III.   <u>Unidentified Defendants</u>

#### A.   **Legal Standards**

The statute of limitations for a section 1983 action is three years from the date that plaintiff's claim accrued. *Owens v. Okure*, 488 U.S. 235, 250–51 (1989).  *See* N.Y. Civ. Prac. L & R. § 214(5).  If the statute has expired, the only way that plaintiff would now be permitted to name additional defendants is if the substitution "relates back" to the original complaint. *Moore v. City of Norwalk*, No. 3:17-CV-695, 2018 WL 4568409, at \*2 (D. Conn. Sept. 24, 2018) (citing Fed. R. Civ. P. 15).  However, there can be no relation back absent a mistake about the party's identity. *Id.*

The Second Circuit has held that the lack of knowledge of a John or Jane Doe defendant's name does not constitute a "mistake of identity" in order to allow relation back. *Id.* (citations omitted).  The failure to identify defendants when the plaintiff knows that the defendants must be named may not be characterized as a mistake. *Id.* (citing inter alia *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013)).  Thus, although a plaintiff may bring an action against a John or Jane Doe defendant, plaintiff must identify and serve that individual or individuals within the statute of limitations for the conduct alleged. *See also Sewell v. Bernardin*, 795 F.3d 337, 342 (2d Cir. 2015); *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995) (Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities).

## B.    Application

This action was filed on October 18, 2016, and plaintiff was advised in Chief

Judge Suddaby's initial order that

> the United States Marshals Service cannot effect service on an
> unidentified defendant. In the event that plaintiff wishes to
> pursue any claims against any John Doe, he must take
> reasonable steps to ascertain the identity of that defendant.
> Upon learning the identity of any unnamed defendant,
> plaintiff must amend his complaint to properly name him or
> her as a defendant. If plaintiff fails to ascertain the identity of
> any defendant so as to permit the timely service of process, all
> claims against that individual will be dismissed.

(Dkt. No. 4 at 9, n.6).  The plaintiff was transferred out of CCJ on May 30, 2014, thus,

any claim against John or Jane Doe defendants who worked at CCJ would have to be

filed on or before May 30, 2017.  At this time, the statute of limitations has expired by

almost two years.[2]

A substantial amount of discovery has occurred in this action, this court has held

at least two telephone conferences, and plaintiff has had the opportunity to attempt to

amend his complaint to identify and serve the John or Jane Doe defendants, but has

failed to do so.[3]  Plaintiff's allegations against these unknown defendants are vague,

---

[2] Although defense counsel does not technically represent "unknown" defendants, counsel has moved for their dismissal from the action based on the statute of limitations. (Dkt. No. 48-1 at 2).

[3] Although plaintiff moved to amend his complaint on July 5, 2017, the motion was based on the plaintiff's attempt to reassert his complaint for supervisory liability against defendants Bartlett and Columbia County. (Dkt. No. 14).  The court denied plaintiff's motion to amend as futile on July 28, 2017, but allowed plaintiff to correct the existing defendant's name to Thom Lanphear from "Lanpher."  This correction was allowed after the statute of limitations expired because plaintiff's mistake in spelling defendant Lanphear's name was the sort of "mistaken" identity that Rule 15(c) "relation back" covers.  There are exceptions to the rule in *Barrow* that district courts have used in certain circumstances which do not apply in this case. *See Escoffier v. City of New York*, No. 13-CV-

4

and any attempt to add new parties this time would be barred by the statute of limitations. Thus, this court recommends dismissing the action as against the John/Jane Doe defendants.

## IV.    <u>Medical Care/Conditions of Confinement</u>

### A.    **Legal Standards**

Individuals who are confined in correctional facilities may be protected from unconstitutional medical care by two different constitutional amendments, depending on the inmate's classification. Inmates who are convicted and incarcerated pursuant to their sentence of conviction are protected from cruel and unusual punishment by the Eighth Amendment, while pretrial detainees are protected from unconstitutional medical care by the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

In order to state a claim for cruel and unusual punishment under the Eighth Amendment, based on constitutionally inadequate medical treatment, a sentenced prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing, *inter alia*,

---

3918, 2017 WL 9538603, at *3 (S.D.N.Y. Jan. 14, 2017) (amendment permitted when the information is particularly within the defendant's knowledge, plaintiff has *diligently* attempted to ascertain the identities through discovery, and plaintiff seeks to amend shortly after learning of those identities) (citation omitted)).

*Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Constitutional medical care claims by pretrial detainees must be analyzed under the Due Process Clause of the Fourteenth Amendment because the Eighth Amendment's cruel and unusual "punishment" clause is not directly applicable to prisoners who have not been convicted. *Darnell*, *supra*. Until recently, the elements for establishing deliberate indifference under the Fourteenth Amendment were the same as under the Eighth Amendment. *Id.* (citing *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009)). The Eight Amendment standard required the inmate to prove "objectively" that the deprivation was "sufficiently serious," that he was denied the minimal civilized measure of life's necessities, and "subjectively" that the defendant's actions were deliberately indifferent to the inmate's health or safety. *Id.*

However, in *Darnell,* the Second Circuit overturned *Caiozzo*, and established a slightly different second element to the Fourteenth Amendment standard. *Id.* The *Darnell* court held that under both the Eighth and the Fourteenth Amendments, the inmate must still establish the first element - an "objective deprivation," showing that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to the inmate's health, including the "risk of serious damage to 'physical and mental soundness.'" *Id.* (quoting *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)). There is no static test for such a determination. *Id.*

However, the court in *Darnell* then discussed the second element of the test, describing it as the "mens rea" or the "mental element prong," rather than the "subjective" prong. *Id.* The court cited *Kingsley v. Henderson*, __ U.S. __, 135 S. Ct.

6

2466 (2015) in which the Supreme Court held that excessive force claims under the Fourteenth Amendment do not require the same subjective intent standard as excessive force cases brought under the Eighth Amendment. *Id.* at 33. The court in *Darnell* found that *Kingsley* "has undercut the reasoning in *Caiozzo*." *Id.* Discussing the Fourteenth Amendment in terms of an excessive force claim, the court in *Kingsley* found that the Eighth Amendment standard did not control excessive force claims under the Fourteenth Amendment. *Id.* (citing *Kingsley*, 135 S. Ct. at 2475).

Based on *Kingsley*, the court in *Darnell* overruled *Caiozzo* "to the extent that *Caiozzo* determined that the standard for deliberate indifference [was] the same under the Fourteenth Amendment as it [was] under the Eighth Amendment." *Id.* The Second Circuit ultimately held that the second prong of the test "is defined objectively" and is shown when "the defendant-official acted intentionally to impose the alleged condition or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known that the condition posed an excessive risk to health or safety." *Id.* at 35.

In *Davis v. McCready*, 283 F. Supp. 3d 108 (S.D.N.Y. 2017), the court discussed the post-*Darnell* standard specifically with respect to medical care, finding that in *Darnell*, the Second Circuit reaffirmed that "something more than negligence is needed to elevate a claim of medical misconduct to a constitutional tort." 283 F. Supp. 3d at 121 (citing *Darnell*, 849 F.3d at 36). The *Davis* court stated that post-*Darnell*, courts are now required to evaluate whether the risk associated with the negligent conduct would "reasonably be expected to be excessive." *Id.* at 122. This standard applies when

the defendant is a medical care provider, and the analysis involves determining whether "a reasonable medical provider would expect the conduct to result in excessive risk, as opposed to some lower baseline level of risk associated with any negligent conduct." *Id. See also Febus v. Somody*, No. 3:18-CV-640, 2019 WL 1763093, at *3 (D. Conn. Apr. 22, 2019) (discussing *Darnell* standard with respect to medical care); *Lombardo v. Freebern*, No. 16-CV-7146, 2019 WL 1129490, at *14 n.15 (S.D.N.Y. Mar. 12, 2019) (noting the extension of *Darnell's* holding to claims of deficient medical treatment) (citations omitted).

### B.    Application

In this case, before the court can discuss the facts of the plaintiff's particular case, the court must determine the plaintiff's confinement status.  Defendant argues that, for purposes of this action, the plaintiff is a "convicted" inmate or a "post-trial" detainee and subject to the Eighth Amendment standard in the evaluation of his claim, although defendant argues in the alternative, that summary judgment is also warranted under the Fourteenth Amendment standard.  Prior to *Darnell*, plaintiff's status would not have been relevant to the actual analysis used by the court in its evaluation because both standards were essentially the same.  However, after *Darnell*, the plaintiff's status becomes much more relevant to the analysis, even though defendant argues that he should succeed under either standard.

In support of the argument that plaintiff is a "post-trial" detainee, defendant cites *Ford v. Grand Travers County*, No. 1:04-CV-682, 2005 WL 2572025, at *1 n.1 (W.D. Mich. Oct. 12, 2005).  However, in a much more recent case from the Northern District

of New York, District Court Judge Brenda Sannes stated that "[w]hether to classify an individual detained for a suspected probation violation as a pretrial detainee or a convicted prisoner is an 'unresolved and difficult question.'" *Hill v. County of Montgomery*, No. 9:14-CV-933, 2018 WL 2417839, at *2 (N.D.N.Y. May 29, 2018) (citations omitted).  Judge Sannes held that because the plaintiff had not yet had a hearing, nor had he been found guilty of the violation, his status was more akin to that of a pretrial detainee. *Id.* (citing inter alia *Chrisco v. Hayes*, No. 17-CV-72, 2017 WL 5404191, at *4 (D. Colo. Nov. 14, 2017) (explaining that pretrial detainees included "'individuals awaiting trial on pending criminal charges and individuals awaiting adjudication on pending accusations that they have violated the terms of their probation or parole.'")).  Judge Sannes cited *Ford, supra* as a comparison, but found the other cases more persuasive and held that an individual confined for a probation or parole violation qualified as a pretrial detainee for purposes of the conditions of confinement analysis, at least until after the hearing and determination of guilt of the violation. *Id.*

In this case, it is undisputed that plaintiff was incarcerated for a parole violation, and it is unclear at what time during the period of plaintiff's incarceration he had his revocation hearing.[4]  However, for purposes of this recommendation, I will assume, based on Judge Sannes's decision in *Hill*, that the *Darnell*, Fourteenth Amendment pre-trial detainee standard applies to plaintiff's claim against defendant Lanphear.[5]

---

[4] One of the records in this case indicates that plaintiff was ordered to appear before the Greenport Town Court on May 5, 2014, but the purpose of the hearing is not listed. (Dkt. No. 49 at 31).

[5] The court notes that plaintiff's response to defendant Lanphear's motion for summary judgment indicates that plaintiff may believe that the County and Sheriff Bartlett are still defendants in this action. (Pl.'s Aff. ¶¶ 27-30) (Dkt. No. 56-1).  Plaintiff is advised that neither the County nor

B.    **Application**

Plaintiff claims that defendant Lanphear denied him the use of his cane while

plaintiff was incarcerated at CCJ.  Plaintiff alleges that the use of his cane was

medically prescribed, and that when he was incarcerated in a New York State facility in

2010, he was given a permit for the cane by the Department of Corrections and

Community Supervision ("DOCCS").  Plaintiff alleges that he needs the cane to assist

him in walking because he suffers from chronic gout.  Plaintiff claims that he informed

the "officers and employees" of CCJ of the medical need for his cane. (Pl.'s Aff. ¶¶ 2-

4).  Plaintiff states that on February 27, 2014, when he arrived at CCJ, "[d]espite the

officers and employees of [CCJ] then being apprised of my medical need for the cane, I

was refused the use of the cane." (Pl.'s Aff. ¶ 5).

Plaintiff claims that the medical staff "confirmed" his condition, but he was

refused the use of his cane. (Pl.'s Aff. ¶¶ 7-8).  Plaintiff states that during his stay at

CCJ, he had "severe outbreaks" of his gout, causing severe pain, inflammation, and

great difficulty walking. (*Id.* at ¶ 10).  Plaintiff states that he made repeated requests for

the cane, but "the officers, employees and staff" still refused to allow him the use of his

cane or any other medical device to assist him in walking. (*Id.* at 11-13).  Plaintiff then

states that on "approximately" March 20, 2014, after he "and the medical staff" made

"numerous requests," the "officers, employees and staff" of CCJ "finally relented and

permitted my cane to be brought inside the facility and held in . . . Officer [Lanphear's]

---

Sheriff Bartlett are defendants in this case.  The court dismissed both of these defendants without
prejudice, but denied plaintiff's motion to amend when he unsuccessfully attempted to correct the
deficiencies in the original complaint against the County and Sheriff Bartlett. (Dkt. Nos. 4, 19).

locker." (*Id.* at ¶ 14).

Plaintiff claims that defendant Lanphear "commandeered [his] cane when it was finally approved to be brought into the facility," and kept it in his locker, but did not permit plaintiff the use of the cane. (*Id.* at ¶ 16). Plaintiff claims that on April 15, 2014, he had an "extreme" flare up of the gout, causing great swelling in his left leg, for which he was given medication by the medical staff. (*Id.* at ¶¶ 17-18). Plaintiff alleges that due to this extreme flare up, he requested the cane "or other medical device" to assist him in walking, but "[u]nconscionably, the officers, employees, and staff of the facility abjectly refused . . . ." (*Id.* at ¶¶ 19-20). Instead, plaintiff claims that he was told to "'hop on [his] other leg'" in order to walk around the facility. (*Id.* at ¶ 20). Plaintiff also claims that the "officers" laughed at him as he tried to hop around the facility, and that on April 19, 2014, "as a specific consequence" of being forced to hop around on one leg, he "severely injured his right leg." (*Id.* at ¶¶ 21-22).

Plaintiff states that his right leg hurt so badly that he was unable to leave his cell and that an MRI confirmed that he had a torn meniscus. (*Id.* at ¶¶ 23-24). Plaintiff states that on May 15, 2014, he filed a grievance addressing the "actions of the officers, employees and staff of the facility regarding the deprivation of a cane or another medical device to assist with [his] walking." (*Id.* at ¶ 25). Plaintiff claims that in a May 20, 2014 ruling, "the hearing officer ruled that indeed I should have been provided with a cane or other medical device to assist with my walking." (*Id.* at ¶ 26).

Even assuming that plaintiff's gout is a serious medical need, the court would first note that plaintiff's assertions are often contradicted by the medical evidence.

Defendant has produced a great number of medical records regarding this plaintiff. (Dkt. Nos. 49, 50). When plaintiff was admitted to CCJ, a medical screening was performed. (Dkt. No. 50 at 35). Plaintiff had a variety of medical conditions which were listed on a progress note written by Registered Nurse (RN) Van Alstyne. (Dkt. No. 50 at 35). A typewritten report also indicates that plaintiff has chronic back pain and ambulates with a cane. (Dkt. No. 50 at 36). Another report indicates that plaintiff is "non-compliant with all meds or medical care providers." (*Id.* at 38). The plaintiff's physical examination showed normal muscle strength and "normal gait." (*Id.* at 40). There is no question that plaintiff was prescribed medication for his gout, along with a variety of other medications for other ailments and conditions. (Dkt. No. 49 at 68, 83).

On March 10, 2014, RN Van Alstyne wrote that plaintiff had a gout flare up of his left great toe, resulting in the his toe being red, swollen, and tender. (Dkt. No. 50 at 32). Plaintiff was limping. (*Id.*) Plaintiff also had a dental abscess. (*Id.*) Medication for the gout and the dental abscess was prescribed. (*Id.*) On March 12, 2014, plaintiff was scheduled to see the dentist. (*Id.*) On April 17, 2014, RN Van Alstyne wrote in a progress note that plaintiff's "gout sx have returned." (Dkt. No. 50 at 31).

On April 20, 2014, there is a lengthy progress note, written by RN Van Alstyne, but also signed by Dr. Johnson. (Dkt. No. 50 at 26). The note states that plaintiff had been "seeking to get his cane brought from home in preparation for transfer to Downstate Correctional. . . . Wants cane to be kept in jail here so, it can be transported with him to state prison. ***Was advised there was no medical necessity for a cane @ this time. Security protocols prohibit items being brought in for storage that have a***

12

***potential to be used as a weapon.***"[6] (*Id.*) (emphasis added).  The progress note also states that "since that time, pt c/o onset of gout.  Seen by Dr. Johnson and [Colchicine][7] started." (*Id.*)  The note states that plaintiff began demanding to go to an outside hospital emergency room and demanding both a wheelchair and cane.  Plaintiff was placed on bed rest and recreation restriction.  Dr. Johnson noted that he would evaluate plaintiff "on rounds."[8] (*Id.*)  Medication was ordered. (*Id.*)

There is a handwritten note in the records from the plaintiff. (Dkt. No. 49 at 13).  The note is not dated, but is addressed to "Lieutenant Hilscher," and the note thanks him for providing timely Passover materials.  The note then states that when plaintiff's wife brought certain items to the facility for plaintiff, she also brought the "cane to put in locker [sic]." (*Id.*)  Plaintiff states that it was "again turned away" because the "head nurse was not on duty."  Plaintiff states that his wife explained that the cane was "medically approved," but also that it was "approved to be in storage locker not in my possession until may draft out." (*Id.*)  Plaintiff requested that Lieutenant Hilscher leave instructions with the control room so that the cane could be received "this week" because plaintiff's parole hearing was scheduled for "Tue next week." (*Id.*)

---

[6] In another handwritten note dated April 20, 2014, Nurse Van Alstyne stated that plaintiff was "non-compliant w/healthcare + meds," and that he was seen by Dr. Johnson about his gout on April 18, 2014.  Colchicine was started prophylactically, but that plaintiff was seeking his cane, even though he was advised that it was not needed at CCJ. (Dkt. No. 49 at 112).  On April 22, 2014, RN Van Alstyne stated that the gout was responding to medication, but the plaintiff complained of decreased mobility and was seeking a wheelchair for long distances.  Dr. Johnson increased plaintiff's medication.

[7] Colchicine is a medication used to prevent or treat attacks of gout, which is caused by too much uric acid in the blood. http://www.mayoclinic.org/drugs-supplements/colchicine-oral-route/description/drg-20067653.  The record also refers to this medication as "Colcrys." (Dkt. No. 50 at 31).

[8] On April 18, 2014, plaintiff had a CT scan of his abdomen for right flank pain which resulted in a variety of findings unrelated to his gout. (Dkt. No. 50 at 27-29).

The court notes that there is another note from plaintiff regarding the Passover Holiday, thanking Lieutenant Hilscher for his "effort in making this happen." (Dkt. No. 49 at 15). The note was stamped received on April 9, 2014. Thus, plaintiff's thank you note, which mentioned his cane must have been written after April 9, 2014. The inventory of plaintiff's property indicates that the cane was given to plaintiff on May 16, 2014. (Dkt. No. 49 at 23). On April 20, 2014, Nurse Van Alstyne wrote a note, restricting plaintiff to bed rest with his feet elevated. (Dkt. No. 49 at 50). The note also placed plaintiff on recreation restriction because he complained of gout. (*Id.*) The note stated that plaintiff was seen by the doctor on April 18, 2014, and his medication had already been started. (*Id.*) On April 22, 2014, the progress notes indicate that plaintiff's gout was getting better. (*Id.* at 59). On May 2, 2014, the progress notes also state that the plaintiff's gout was getting better. (*Id.*)

On May 5, 2014, an MRI of plaintiff's right knee was scheduled. (Dkt. No. 49 at 47). On May 14, 2014, plaintiff had the MRI which showed a diffuse nondisplaced horizontal cleavage tear of the lateral meniscus, cartilaginous thinning along the lateral facet of the patella, moderate patellar tendinosis, a moderate sized complex popliteal cyst without evidence of rupture, and no evidence of ligament injury. (*Id.* at 49). On May 20, 2014, the progress note indicates that plaintiff had redness and swelling in his right great toe, that pain was increased, and that he had a "Hx" of gout. (Dkt. No. 49 at 47) Dr. Johnson was notified, and a new order for Colchicine was issued. (*Id.*)

In support of his motion for summary judgment, defendant Lanphear has filed affidavits by RN Van Alstyne, Dr. Johnson, Grievance Coordinator Brian Gardner, and

14

former defendant Sheriff Bartlett. (Def.s' Exs. N-R).  Plaintiff claims that defendant

Lanphear unreasonably denied plaintiff his cane, notwithstanding the medical

department finding that he needed one.  However, the medical records and the

affidavits written by the medical personnel demonstrate that plaintiff was never told

that he needed a cane.  In fact, the records show that RN Van Alstyne and Dr. Johnson

each found that plaintiff did not need a cane at CCJ. (Van Alstyne Aff. ¶¶ 4-5, Def.s'

Ex. N; Johnson Aff. ¶ 2, Def.s' Ex. R).

    Plaintiff did have flare ups of his gout, but they were treated with medication,

and on April 22, he was given a permit for crutches by the medical department because

of the severity of his symptoms. (Van Alstyne Aff. ¶ 9).  By May 2, 2014, the records

indicate that plaintiff's gout was "better." (Van Alstyne Aff. ¶¶ 10-11).  Both Dr.

Johnson and RN Van Alstyne also stated that if plaintiff actually needed a cane or other

medical device, he would not need to have one brought into CCJ because the Medical

Unit had its own medical equipment, including canes, crutches, and wheelchairs. (Van

Alstyne Aff. ¶ 2; Bartlett Aff. ¶ 5). Sheriff Bartlett confirmed that the jail has canes,

crutches, and wheelchairs, and there is no reason that an inmate would need a cane

brought into the facility from an outside source. (Bartlett Aff. ¶ 5).

    Sheriff Bartlett also states in his affidavit that the decision to allow an inmate at

the jail to have a medical device was up to the Medical Director - Dr. Johnson, and that

a nurse may make the decision as long as the Medical Director approves. (Bartlett Aff.

¶ 3). Thus, even assuming that defendant Lanphear refused to give plaintiff his cane,

(an act that defendant Lanphear does not admit), plaintiff would have been able to

15

obtain one from the medical department.  Defendant Lanphear was not acting contrary

to any medical directives or recommendations.  In fact, he acted consistently with Dr.

Johnson's finding that plaintiff did ***not*** need a cane at CCJ.  It is clear that only Dr.

Johnson may make the final determination whether to allow an inmate to have a cane or

any other medical device.

Plaintiff's claim that defendant Lanphear "commandeered" the cane once it was

sent to the facility is completely unsupported.  Plaintiff wrote a note to Lieutenant

Hilscher - not to defendant Lanphear - asking that plaintiff's wife be able to leave his

cane at the facility "in [a] storage locker not in my possession until my draft out." (Dkt.

49 at 13).  Plaintiff was worried that he would not have his cane when he was

transferred to a state facility after the parole revocation. (*Id.*)  RN Van Alstyne

confirmed that plaintiff wanted the cane for "when he left for state prison." (Van

Alstyne Aff. ¶ 2).  The court notes that in his request to Lieutenant Hilscher, plaintiff

stated that his wife tried to bring the cane, but was "turned away," because "the head

nurse was not on duty." (Dkt. No. 49 at 13).  Plaintiff does not even mention defendant

Lanphear in his note to Lieutenant Hilscher.

Plaintiff brought a grievance shortly before he was transferred to Downstate

Correctional Facility. (Def.s' Ex. K, Dkt. No. 48-13).  Although plaintiff claims that his

grievance was granted, but that the "officials" continued to deny him his cane, the

grievance documents do not support plaintiff's allegations.  In fact, the documents and

the grievance coordinator's affidavit show that plaintiff's grievance was denied. (*Id.*);

Gardener Aff. ¶¶ 4-5, Def.s' Ex. O, Dkt. No. 48-17).  A review of plaintiff's grievance

shows that he never mentioned defendant Lanphear as one of the "officers" who allegedly denied him his cane. The Grievance Investigation Form states that Lieutenant Hilscher told then-Sergeant Gardner that plaintiff requested the cane so that it could be brought with him to Downstate, and that the cane was ultimately brought to the facility and "secured in the closet in reception." (Def.s' Ex. K at 2). There is absolutely no indication in any of the records that defendant Lanphear "commandeered" the cane, or placed it in his own locker when the cane was finally brought to the facility just prior to plaintiff's transfer.[9]

Plaintiff's grievance also states that on April 17, 2014, "medication was administered," but he was forced to walk on a swollen foot to accomplish daily tasks. (Def.s' Ex. K at 4). Plaintiff also alleged that the next morning - April 18 - plaintiff woke up with so much pain that he was unable to touch his left foot, but when the nurse arrived, "the officer" forced plaintiff to hop to the block door for his medication. Plaintiff claimed that the nurse suggested crutches, but the officer "went to CO in front + came back with neg. on the crutches." (*Id.*) The grievance states that during the night, plaintiff asked "CO Edgeworth"[10] if plaintiff could go to the hospital, but his request was denied. (*Id.*) The grievance also states that a "different" nurse saw plaintiff on Sunday, and she also suggested crutches, which were denied. (*Id.*)

Plaintiff claimed that he was forced to hop around for two days, and that "on

---

[9] It is unclear how plaintiff would have known if defendant Lanphear put plaintiff's cane in his locker. Plaintiff provides no support for this conclusory assertion.

[10] It is unclear from the grievance whether plaintiff has written "OD" or "CO" to identify Edgeworth. However, it appears that James Edgeworth was a Lieutenant, and was an Assistant Chief Corrections Officer. (Def.s' Ex. F at 3).

Monday," when the nurse went to plaintiff's cell, she could not believe that plaintiff was left to "hop around all weekend," and "immediately" ordered the crutches. Plaintiff states that the nurse also "arranged wheel chair rides to program movement, visits, medical, . . . [and] to Parole Hearing." (*Id.*)  Plaintiff never mentions defendant Lanphear involvement in any of this conduct, even though plaintiff specifically mentions Officer Edgeworth.

The medical records indicate that plaintiff saw Dr. Johnson on April 18, 2014 and on April 22, 2014. (Def.s' Ex. I at 4, 6).  On April 22, 2014, plaintiff's progress note states that he gout was responding to the medication, and he complained of decreased mobility and needed a wheelchair for long distances "per pt." (Def.s' Ex. I at 4).  Dr. Johnson increased the medication dosage. (*Id.*)  Nurse Van Alstyne issued a Recreation Restriction form on April 20, 2014, ordered bed rest, and told plaintiff to "keep feet elevated." (Def.s' Ex. I at 24).  April 20, 2014 was also the day that Nurse Van Alstyne wrote the note about plaintiff's cane being brought into the facility so that it could be stored and sent with him to the "state prison." (Def.s" Ex. I at 26).  Nurse Van Alstyne advised plaintiff that there was no medical necessity for the cane at this time. (*Id.*)  This note is inconsistent with the allegations in plaintiff's grievance that he was ignored between April 17th and April 22, when he was finally allowed to have crutches.

In any event, plaintiff does not allege anywhere in his pleadings that defendant Lanphear was involved at all during this period.  The day that plaintiff alleges that he was forced to hop around and hurt his knee as a result, defendant Lanphear was not on

duty. (Def.s' Ex. F at 3).  Defendant Lanphear was not on duty either April 19 or April

20, 2014. (Def.s' Ex. F at 3 (4/19), 5 (4/20)).  Plaintiff conceded this during his

deposition. (Pl.'s Dep. at 40) (Def.'s Ex. D, Dkt. No. 48-8).  Plaintiff testified that he

had no contact with the defendant the weekend of April 19th because the defendant

"was away." (*Id.*)

Plaintiff continues to urge that defendant Lanphear is responsible for

unreasonably denying plaintiff his personal cane so that he could walk around the

facility.  Plaintiff bases this claim on his unsupported allegation that the medical

personnel and the grievance director recommended or "ordered" that plaintiff be given

some form of assistance for walking.  In his deposition, plaintiff states that when the

nurse saw him after he hurt his right leg "hopping" around, she said "I can't believe

these idiots." (Pl.'s Dep. at 41).  Plaintiff also claims that Grievance Director Gardner

"flipped out" when he heard about plaintiff's situation, granted his grievance, and gave

him everything he wanted "in seconds." (Pl.'s Dep. at 41-44).  Plaintiff also stated that

the nurse "flipped out" and gave him crutches and a wheel chair. (*Id.* at 61-62).

Plaintiff claims that "they" approved his cane, but plaintiff had to wait for "them" to

open the locker. (*Id.* at 62).  Plaintiff seems to have assumed that the officers meant that

the "locker" belonged to defendant Lanphear.

If defendant Lanphear had ignored such urging from medical personnel, plaintiff

could have established a question of fact relating to the reasonableness of defendant

Lanphear's conduct in denying plaintiff his cane or at least some sort of medical device.

However, as stated above, the medical records, including contemporaneous progress

notes and affidavits, signed by both Dr. Johnson and Nurse Van Alstyne stated specifically that plaintiff did ***not*** need a cane at this facility.  A corrections officer, who may not have any medical background, is not constitutionally required to override the judgment of medical professionals. *See Little v. City of New York*, No. 16 Civ. 780, 2017 WL 713895, at *4 (S.D.N.Y. Feb. 3, 2017) (citing *Burns v. Trombly*, 624 F. Supp. 2d 185, 204 (N.D.N.Y. 2008) ("The Eighth Amendment simply does not impose a duty on a correctional officer to second-guess (and, indeed, ignore) the medical judgment of a prison medical care professional. . . .")), *Rep't Rec. adopted*, 2017 WL 698386 (S.D.N.Y. Feb. 21, 2017).  *Little* and *Burns* were Eighth Amendment cases, but the Fourteenth Amendment would likely not require a corrections officer to second guess or ignore the findings of medical personnel.  It would have been unreasonable for defendant Lanphear to have done so.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general.  *Smith v. Woods*, 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006).   Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.'" *Id.,* 2006 WL 1133247, at *3 & n.11 (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh

the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")).

In this case, plaintiff's account is not supported by any of the evidence. It is not supported by the medical records, the grievance records, or the affidavits of the medical personnel and the grievance director himself. There is no dispute that plaintiff has a variety of medical conditions, including gout that flares up at different times and needs medical treatment. Plaintiff does not dispute the he received medical treatment from the medical professionals. He alleges that defendant Lanphear unreasonably refused to allow him the use of his cane notwithstanding the direction of the medical department. Plaintiff's claim is unsupported by any of the evidence, and thus, he has failed to raise a triable issue of fact with respect to defendant Lanphear's conduct, even under *Darnell*.

Plaintiff's argument that he was allowed to have his cane in a New York State facility in *2010* does not change this court's opinion. Plaintiff is referring to his prior incarceration, four years prior to the county jail confinement involved in this case. In any event, defendant Lanphear would still not be able to overrule the medical personnel in his own facility in favor of a potentially outdated New York State facility permit. Ignoring current medical orders would be more unreasonable conduct by the defendant than failing to honor a four-year-old New York State facility permit.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment on behalf of the John/Jane Doe defendants (Dkt. No. 48) be **GRANTED**, and it is

**RECOMMENDED**, that defendant Lanphear's motion for summary judgment (Dkt. No. 48) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: May 15, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge